IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| JACKSON PAVELKA AND KAYLEE PAVELKA, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>PAUL MOSS INSURANCE AGENCY, LLC D/B/A EPIQ INSURANCE AGENCY, an Ohio limited liability company,<br><br>*Defendant.* | Case No.:<br><br>CLASS ACTION COMPLAINT<br><br>DEMAND FOR JURY TRIAL |

Plaintiffs Jackson Pavelka and Kaylee Pavelka ("Plaintiffs") brings this Class Action Complaint and Demand for Jury Trial ("Complaint") against Paul Moss Insurance Agency, LLC d/b/a Epiq Insurance Agency ("Epiq" or "Defendant") to stop Epiq's practice of placing calls to consumers that violate the Telephone Consumer Protection Act (TCPA) and to obtain redress for all persons similarly injured by Epiq's conduct. Plaintiffs also seek an award of statutory damages to the members of the Classes, plus court costs and reasonable attorneys' fees. Plaintiffs, for their Complaint, allege as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

**PARTIES**

1. Plaintiff Jackson Pavelka is an individual who resides in Irving, Dallas County, Texas.

2. Plaintiff Kaylee Pavelka is an individual who resides in Irving, Dallas County,

1

Texas.

3. Defendant Epiq is an Ohio limited liability company whose principal place of business is located at 5895 Harper Road, Solon, OH 44139.

**JURISDICTION & VENUE**

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA" or the "Act"), a federal statute. This Court also has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332 ("CAFA"), because the alleged Classes consists of over 100 persons, there is minimal diversity, and the claims of the class members when aggregated together exceeds $5 million. Further, none of the exceptions to CAFA applies.

5. The Court has personal jurisdiction over Defendant and venue is proper in this District, because Defendant resides in this District, regularly conducts business in this District and a substantial part of the wrongful conduct giving rise to the claims asserted here occurred in, was directed to, and/or emanated from this District.

**COMMON ALLEGATIONS OF FACT**

6. Defendant Epiq is a nationwide insurance agency primarily selling auto and home insurance policies.

7. In an attempt to promote its business and to generate leads for its insurance related products and services, Epiq conducted (and continues to conduct) a wide scale telemarketing campaign. Unfortunately for consumers, Epiq places repeated unsolicited, autodialed and prerecorded telephone calls and texts to consumers' cellular telephones—all without securing prior express consent. Such conduct violates the TCPA.

8. In making the autodialed calls at issue in this Complaint, Defendant and/or its agents utilized an automatic telephone dialing system ("ATDS"). Specifically, the hardware and software used by Defendant and/or its agents has the capacity to store, produce, and dial random or sequential numbers *en masse*, in an automated fashion.

9. On information and belief, the dialing system used to place the calls at issue has the capacity to use a random or sequential number generator in the process of storing numbers from a pre-produced list for texting and calling at a later date. When placing the calls and texts at issue, Defendant employed this feature of its dialing system.

10. On further information and belief, the dialing system at issue also has the capacity to produce telephone numbers using a random or sequential number generator. When placing the calls and texts at issue, Defendant employed this feature of its dialing system.

11. Additionally, in placing the calls that form the basis of this Complaint, Defendant also utilized a prerecorded voice or voice message.

12. The TCPA was enacted to protect consumers from unauthorized, unsolicited telephone calls exactly like those alleged in this Complaint—autodialed and prerecorded calls and texts placed to consumers without prior express consent.

13. By placing the unsolicited calls at issue in this Complaint, Defendant caused Plaintiffs and the members of the Classes actual harm and cognizable legal injury. This includes the aggravation and nuisance and invasions of privacy that result from the receipt of such telephone calls and texts as well as a loss of value realized for any monies that consumers paid to their carriers for the receipt of such telephone calls. Furthermore, the calls interfered with and interrupted Plaintiffs' and the other class members' peace and quiet, their right to be left alone,

and their use and enjoyment of their phones, including the related data, software, and hardware components. Defendant also injured the Plaintiffs and class members by causing wear and tear on their phones.

14. At no time did Defendant obtain prior express consent from Plaintiffs and the class members orally or in writing to receive telephone calls or texts from Defendant.

15. Defendant was, and is, aware that telephone calls or texts described herein were made to consumers like Plaintiffs who have not consented to receive them.

16. To the extent any third party placed the telephone calls, the third party acted on behalf of Defendant, with Defendant's knowledge and approval, and under Defendant's direction and control. Further, Defendant knowingly received the benefit of the calls and has ratified the making of calls.

17. On behalf of the Classes, Plaintiffs seek an injunction requiring Epiq to cease making unsolicited autodialed and prerecorded telephone calls and text messages and an award of statutory damages to the class members, together with pre- and post-judgment interest, costs and reasonable attorneys' fees.

**FACTS SPECIFIC TO PLAINTIFF**

18. Plaintiff Kaylee Pavelka is the primary and customary user of the cellular telephone number ending in 4742.

19. Plaintiff Jackson Pavelka is the subscriber for the cellular telephone number ending in 4742.

20. On September 29, 2022, at 1:11 p.m., Kaylee Pavelka received an unsolicited autodialed and prerecorded telemarketing call from Epiq from the telephone number 817-209-

2712. Upon answering the call, Kaylee heard a "bloop" sound prior to being connected with Natalie, a representative of Epiq, who stated that she was calling about a safe driver incentive and informed Kaylee that she was familiar with all insurance. Natalie then stated that she would run a quote for Kaylee. Thereafter, Kaylee heard another "bloop" and was transferred to another representative of Epiq named Raven, who verified Kaylee's address and sought additional information. After she provided additional information, Kaylee heard another "bloop" and then heard a recording stating that she would be connected to an agent for coverage options. Kaylee then heard another "bloop" and heard another recording stating that they were waiting to connect her with an agent. Eventually, someone picked up the line and informed Kaylee that all agents were busy and that she would get a text with quote details. At this point, there was a swoosh noise and the call ended.

21. Later on September 29, 2022, at 4:07 p.m., Kaylee Pavelka received a text message from Epiq from the telephone number 440-481-1312. The text message followed up regarding Kaylee's insurance quote. At the end of this text message exchange, Kaylee requested that Epiq stop placing calls or texts to her cellular telephone number.

22. On or around October 6, 2022, Kaylee Pavelka received a text message from Epiq from the telephone number 855-919-2216. The text message again solicited Kaylee to purchase an auto insurance policy.

23. Once again, Kaylee requested that the calls and texts cease by responding "Stop" to the text message.

24. A screenshot of the October 6, 2022, text messages is reproduced on the following page.



25. All of the calls and texts solicited or sought to solicit Plaintiffs to purchase Defendant's auto insurance policies and/or insurance related products and services.

26. At no time did Plaintiffs ever consent to receive telephone calls from Defendant, and Plaintiffs have no prior relationship with Defendant.

27. To redress these injuries, Plaintiffs, on behalf of themselves and the Classes of

similarly situated individuals, brings suit under the TCPA, which prohibits the making of unsolicited autodialed and prerecorded calls absent prior express consent. On behalf of the Classes, Plaintiffs seek an injunction requiring Epiq to cease placing unsolicited autodialed and prerecorded telephone calls and texts, and an award of statutory damages to the class members, together with costs and reasonable attorneys' fees.

## CLASS ACTION ALLEGATIONS

28. Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of themselves and the following Classes:

> **Autodialed Call Class:** All persons in the United States who from four years prior to the filing of the initial complaint in this action through the date notice is sent to the class members: (1) Defendant, or a third person acting on behalf of Defendant, called or texted; (2) on the person's cellular telephone; (3) for the same purpose Plaintiff was called; (4) using the equipment used to call Plaintiff; and (5) for whom Defendant claims it obtained prior express written consent in the same manner as Defendant claims it supposedly obtained prior express written consent to place prerecorded calls to the Plaintiff.
>
> **Prerecorded No Consent Class:** All persons in the United States from four years prior to the filing of the instant action who (1) Defendant (or a third person acting on behalf of Defendant) placed at least one call, (2) featuring an artificial and/or prerecorded voice; (3) to the person's cellular telephone number, and (4) for whom Defendant claims it obtained prior express written consent in the same manner as Defendant claims it supposedly obtained prior express written consent to place prerecorded calls to the Plaintiff.

29. The following people are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Classes; (4)

persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendant's counsel; and (6) the legal representatives, successors, and assignees of any such excluded persons. Plaintiffs anticipate the need to amend the class definition following appropriate discovery.

30. **Numerosity:** The exact number of members within the Classes is unknown and not available to Plaintiffs at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendant has placed unsolicited calls to thousands of consumers who fall into the defined Classes. Members of the Classes can be objectively identified through reference to Defendant's records, consumer phone records, and other evidence to be gained in discovery.

31. **Typicality:** Plaintiffs' claims are typical of the claims of other members of the Classes, in that Plaintiffs and the members of the Classes sustained damages arising out of Defendant's uniform wrongful conduct.

32. **Adequate Representation:** Plaintiffs will fairly and adequately represent and protect the interests of the Classes and has retained counsel competent and experienced in complex class actions. Plaintiffs have no interests antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiffs.

33. **Commonality and Predominance:** There are questions of law and fact common to the claims of Plaintiffs and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

    (a) Whether Defendant's conduct violated the TCPA;

    (b)    Whether Defendant obtained prior express consent, as required by the TCPA, prior to placing the telemarketing calls at issue;

    (c)    Whether Defendant made the calls and/or text messages utilizing an ATDS;

    (d)    Whether Defendant made the calls utilizing an artificial and/or prerecorded voice;

    (e)    Whether any third party made the calls and, if so, whether Defendant is liable for such calls;

    (f)    Whether the Plaintiffs and the other members of the Classes are entitled to statutory damages; and

    (g)    Whether Defendant acted willfully so as to require an award of treble damages.

34.    **Superiority:** This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy. Joinder of all parties is impracticable, and the damages suffered by the individual members of the Classes will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Classes to obtain effective relief from Defendant's misconduct. Even if class members could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer

management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

35. **Conduct Similar Towards All Class Members:** By committing the acts set forth in this pleading, Defendant has acted or refused to act on grounds substantially similar towards all members of the Classes so as to render certification of the Classes for final injunctive relief and corresponding declaratory relief appropriate under Rule 23(b)(2).

### FIRST CAUSE OF ACTION
### Violation of 47 U.S.C. § 227, *et seq*
### (On Behalf of Plaintiffs and the Autodialed Call Class)

36. Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

37. Defendant made unsolicited and unwanted autodialed telemarketing calls and texts to telephone numbers belonging to Plaintiffs and the other members of the Autodialed Call Class—without their prior express written consent—in an effort to sell its products and services.

38. Further, Defendant placed the calls and texts using equipment that, on information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

39. Defendant failed to obtain any prior express written consent that included, as required by 47 C.F.R. § 64.1200(f)(8)(i), a "clear and conspicuous" disclosure informing the person that:

> (A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and

(B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

40. By making unsolicited telephone calls and texts to Plaintiffs and members of the Autodialed Call Class's cellular telephones using an ATDS without first obtaining prior express consent, Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii).

41. As a result of Defendant's unlawful conduct, Plaintiffs and the members of the Autodialed Call Class suffered actual damages in the form of monies paid to receive the unsolicited telephone calls and texts on their cellular phones, lost data, and other damages, and, under Section 227(b)(3)(B) are each entitled to, *inter alia*, a minimum of $500 in damages for each such violation of the TCPA.

42. Should the Court determine that Defendant's conduct was willful and knowing, the Court may, pursuant to Section 227(b)(3), treble the amount of statutory damages recoverable by Plaintiffs and the other members of the Autodialed Call Class.

43. Plaintiffs and the Autodialed Call Class members are also entitled to injunctive relief and corresponding declaratory relief to ensure that the calls stop.

**SECOND CAUSE OF ACTION**
**Violation of 47 U.S.C. § 227,** *et seq*
**(On Behalf of Plaintiffs and the Prerecorded No Consent Class)**

44. Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

45. Defendant made prerecorded calls to residential telephone numbers belonging to Plaintiffs and other members of the Prerecorded No Consent Class without first obtaining prior express written consent to receive such calls.

46. By making the prerecorded calls to Plaintiffs and the residential telephones of members of the Prerecorded No Consent Class without their prior express written consent, Defendant violated 47 U.S.C. § 227(b)(1)(B).

47. The calls were for telemarketing purposes and announced the commercial availability of Defendant's insurance related products and services.

48. Neither Plaintiffs nor any other member of the proposed Class had any established business relationship with Defendant.

49. Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's conduct, Plaintiffs and the other members of the Prerecorded No Consent Class are each entitled to, under 47 U.S.C. § 227(b)(3)(B), a minimum of $500.00 in damages for each violation of such act.

50. In the event that the Court determines that Defendant's conduct was willful and knowing, it may, under 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiffs and the other members of the Prerecorded No Consent Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and the Classes, pray for the following relief:

A. An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiffs as the representatives of the Classes, and appointing their attorneys as Class Counsel;

B. A declaratory judgment that Defendant's telephone dialing equipment constitutes an automatic telephone dialing system under the TCPA;

C. An order declaring Defendant's telephone calls, as set out above, violate the TCPA;

D. An award of actual monetary loss from such violations or the sum of five hundred dollars ($500.00) for each violation of the TCPA, whichever is greater, to be trebled where the calls were knowingly or willfully placed, all to be paid into a common fund for the benefit of the Plaintiffs and the Class Members;

E. An injunction requiring Epiq to stop placing autodialed and prerecorded calls and text messages to consumers absent prior express consent;

F. An award of pre-judgment interest;

G. An award of reasonable attorneys' fees and costs; and

H. Such further and other relief the Court deems reasonable and just.

## JURY DEMAND

Plaintiffs request a trial by jury of all claims that can be so tried.

Respectfully Submitted,

**JACKSON PAVELKA and KAYLEE PAVELKA**, individually and on behalf of all others similarly situated,

Dated: December 9, 2022     By: /s/ Scott D. Simpkins

Scott D. Simpkins
SDSIMP@climacolaw.com
Climaco, Wilcox, Peca & Garofoli Co., LPA
55 Public Square, Suite 1950
Cleveland, Ohio 44113
Telephone: (216) 621-8484

Taylor T. Smith*
tsmith@woodrowpeluso.com

Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 907-7628
Facsimile: (303) 927-0809

Attorneys for Plaintiffs and the Classes

* *Pro Hac Vice* Admission to Be Sought