IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JACKSON PAVELKA AND KAYLEE PAVELKA, | Case No. <u>1:22-cv-2226</u> |
| Plaintiffs, | JUDGE DONALD C. NUGENT |
| vs. | |
| PAUL MOSS INSURANCE AGENCY, LLC, DBA EPIQ INSURANCE AGENCY, an Ohio limited liability company, | **<u>DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR DETERMINATION THAT PLAINTIFFS ARE NOT PROPER PARTIES AND TO DISMISS THE COMPLAINT</u>** |
| Defendant. | |

Defendant Paul Moss Insurance Agency, LLC d/b/a Epiq Insurance Agency ("Paul Moss" or "Defendant") submits this Memorandum of Law in Support of its Motion as to Whether Plaintiffs are Proper Parties, showing this Court as follows:

## I.  INTRODUCTION

On December 9, 2022, Plaintiffs filed this action against Defendant alleging two claims under the Telephone Consumer Protection Act ("TCPA"). First, Plaintiffs allege that Defendant made calls to Plaintiffs using an automatic telephone dialing system ("ATDS") without Plaintiffs' consent. Second, Plaintiffs allege that Defendant made calls to Plaintiffs using a prerecorded voice without Plaintiffs' consent. Plaintiffs also purport to raise these claims on behalf of two putative nationwide classes.

When the parties prepared their Rule 26(f) Report, Defendant proposed bifurcating discovery, with discovery as to Plaintiffs' individual claims to be conducted first. Defendant proposed filing a dispositive motion after conducting individual discovery, with class discovery

to be conducted only if the dispositive motion was not granted. On February 27, 2023, the parties attended the Case Management Conference. Defendant again proposed bifurcating discovery and explained the basis for doing so. During that conference, the Court requested that the parties brief the issue of whether Plaintiffs are proper parties in this matter and set forth the briefing schedule.

As explained below, because Plaintiffs have not sufficiently pled, nor can they demonstrate, that Paul Moss violated the TCPA, Plaintiffs are not proper parties such that their claims must fail. Therefore, their claims should be dismissed in their entirety.

## II. BACKGROUND FACTS

### A. Paul Moss Contracted With Datalot.

On October 24, 2013, Paul Moss and Datalot, Inc. ("Datalot") entered into a Datalot Lead Sales Agreement (the "Agreement") governing services Datalot was to perform for Paul Moss. (See Declaration of Stephen Wilt ("Datalot Declaration"), attached hereto as Exhibit 1, ¶ 3, Ex. A.). Datalot agreed to provide Paul Moss with certain information regarding potential customers. Specifically, the Agreement provides that "Datalot shall generate and collect self-reported data records (each individual data record a "Lead") as provided by prospective customers to Datalot and its third party marketing partners." (Id. ¶ 1.) It also states that "Datalot shall transfer Leads that match [Paul Moss's] criteria to" Paul Moss. (Id.)

The Agreement also provides Datalot's representation and warranty that "the execution, delivery and performance by Datalot of the Agreement will not violate any law, statute or other governmental regulation; and . . . that Datalot's Lead generation activities will at all times fully comply with all applicable Laws." (Id. ¶ 6.) Furthermore, the Agreement provides that the relationship between Datalot and Paul Moss established by the Agreement is "solely that of

independent contractors, and neither party is an employee, agent, partner or joint venturer of the other." (Id. ¶ 12.)

B. **Datalot Received a Warm Transfer[1] That it Then Forwarded to Paul Moss.**

Paul Moss did not make the telephone calls Plaintiffs allege. Instead, the call at issue was transferred from Datalot to Paul Moss as a warm transfer. Prior to the call with Paul Moss, Mrs. Pavelka spoke to Datalot's representative for approximately five minutes about her request for auto insurance. (The recording of the call between Mrs. Pavelka and Datalot ("Datalot Recording") is attached as Exhibit B to the Datalot Declaration and is being filed under seal.) As is evident in the recording, Mrs. Pavelka's call with Datalot was itself a warm transfer from an unknown third-party. (Id.) During the call with Datalot, Mrs. Pavelka provided personal information to allow the representative to gather information to obtain a quote for automobile insurance. (Id.) Mrs. Pavelka provided information about her current automobile insurance, including the number of vehicles she was looking to insure. (Id.) Near the end of the call, the Datalot representative explained that Mrs. Pavelka could receive an optional, automated text message regarding the insurance quote. (Id.) Mrs. Pavelka asked if the representative could send it to her via email. (Id.) After the representative explained that she could only send the message via text, but that it was optional, Mrs. Pavelka agreed to receive the text. (Id.)

C. **Paul Moss Received a Warm Transfer from Datalot.**

After the call with Datalot, Mrs. Pavelka was transferred to a Paul Moss representative who identified herself as an insurance processor assisting with an insurance quote. (The recording of the call between Mrs. Pavelka and Paul Moss ("Paul Moss Recording") is attached as Exhibit B to the Declaration of Paul Moss ("Paul Moss Declaration") attached hereto as

---

[1] Generally, a warm transfer occurs when someone speaks with a caller before the call is transferred to another person.

Exhibit 2, and is being filed under seal.). Mrs. Pavelka spoke to the representative and provided additional information to obtain an insurance quote. (Id.) The call lasted more than ten minutes. (Id.) Mrs. Pavelka stated that she was seeking a quote for two vehicles, was a homeowner, and provided the representative information about her current insurance premium amount. (Id.) Mrs. Pavelka also provided her email address, spouse's name, her Driver's License Number, her date of birth, her spouse's date of birth, and information about her and her spouse's education. (Id.) At the end of the call, the Paul Moss representative notified Mrs. Pavelka that all agents were currently busy, but that Mrs. Pavelka would get a text within the hour with quote details. (Id.) Mrs. Pavelka asked whether Paul Moss would be able to send her an email as well. (Id.) The representative explained that they could only send a text. (Id.) Mrs. Pavelka responded "O.K." and said "thank you" and the call ended. (Id.)

**D.    Paul Moss Exchanged Text Messages with Plaintiff Kaylee Pavelka and Ceased Communicating With Her After She Requested That it Stop.**

Thereafter, Paul Moss's agent Brett Hanson sent Mrs. Pavelka a text message providing her a quotation for automobile insurance. (Paul Moss Declaration, Ex. A). Mr. Hanson addressed the text message to "Kaylie" and explained that he was the agent assigned to finish up her quote. (Id.) As part of that process, Mr. Hanson asked for Mrs. Pavelka to confirm whether she wanted full coverage or just liability. (Id.) Mrs. Pavelka responded less than ten minutes later that she wanted full coverage. (Id.) Mr. Hanson then sent her information about the automobile insurance quotes. (Id.) This text exchange is set forth below.



(Id.) One minute later Mrs. Pavelka then asked whether the underwriter of the insurance was State Farm and also asked, "How do I know you're a real agency?" (Id.) Mr. Hanson then provided information about the agency as set forth in the exchange below. (Id.)



After Mr. Hanson provided this information, Mrs. Pavelka sent the following lengthy text message requesting that Paul Moss stop contacting her.

(Id.) After receiving this message, Paul Moss did not contact Mrs. Pavelka again. (Paul Moss Declaration at ¶ 5).

Plaintiffs allege that they received a text on October 6, 2022. (Complaint ¶¶ 22-24.) However, Paul Moss did not send this text. (Paul Moss Declaration ¶ 5.) Additionally, as demonstrated during her conversation with Datalot, Mrs. Pavelka provided her consent to receive this text. (See Datalot Recording.)

### III. ARGUMENT AND CITATION OF AUTHORITY

**A. Paul Moss Did Not Use An ATDS**

Plaintiffs allege that Paul Moss made unsolicited and unwanted autodialed telemarketing calls and texts to Plaintiffs using an ATDS. (Complaint ¶¶ 37, 38.) The TCPA defines an ATDS as "equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. 227(a)(1). As the United States Supreme Court explained in Facebook, Inc. v. Duguid, 141 S.Ct. 1163 (2020), such a system has the capacity either to store a telephone number using a random or sequential number generator, or to produce a telephone number using a random or sequential number generator. Id. at 1170. In Duguid, the Supreme Court held that Facebook, which had an optional security feature that sent users text messages when an attempt is made to access their accounts from unknown devices or browsers, was not using an ATDS, since the notification system neither stored nor produced numbers using a random or sequential number generator. Id. at 1170.

Paul Moss did not make the telephone call at issue. Rather, it received a warm transfer from Datalot. As it relates to the text messages, Paul Moss did not utilize an ATDS, either. This is evident because the message was directed to "Kaylie" after her conversation about auto insurance. (Paul Moss Declaration, Ex. A) See, e.g., Barry v. Ally Financial, Inc., No. 20-12378, 2021 WL 2936636 (E.D. Mich. July 13, 2021) (dismissing complaint alleging use of

ATDS where calls were targeted at specific individuals in connection with specific accounts held by defendant.)  Moreover, as is evident during Mrs. Pavelka's call with Paul Moss, she provided her consent to receive the text message.  (Paul Moss Recording.)  Thereafter, the Paul Moss representative and Mrs. Pavelka engaged in a text exchange regarding quotes for automobile insurance.  After Mrs. Pavelka requested that Paul Moss stop contacting her, Paul Moss did not contact her again.  For these reasons, Plaintiffs do not have a claim under the TCPA based on a theory that Paul Moss used an ATDS to contact them without their consent.

To the extent that Plaintiffs are relying on the October 6, 2022 text, Paul Moss did not send this message.  (Paul Moss Declaration ¶ 5)  Moreover, Mrs. Pavelka provided consent to receive that text as well, as is demonstrated in her call with Datalot.  (Datalot Recording.)

For these reasons, Plaintiffs are not able to establish a violation of the TCPA against Paul Moss based on a theory that it used an ATDS to contact Plaintiffs.  Therefore, Plaintiffs are not the proper parties for such claims.

B. **Plaintiffs Have Not Sufficiently Alleged That Any Call Was Made With a Prerecorded Voice**

Plaintiffs also allege that "Defendant made prerecorded calls to residential telephone numbers belonging to Plaintiffs and other members of the Prerecorded No Consent Class without first obtaining prior express written consent to receive such calls."  (Complaint ¶ 45.)  As explained above, Paul Moss did not make any telephone calls to Plaintiffs, including any prerecorded calls.  Additionally, Plaintiffs fail to allege any facts supporting their allegation that Defendant made calls with a prerecorded voice to Plaintiffs.

For these reasons, Plaintiffs are not able to establish a violation of the TCPA against Paul Moss based on a theory that it contacted Plaintiffs through a call using a prerecorded voice.  Therefore, Plaintiffs are not the proper parties for this claim, either.

### C. Plaintiffs Lack Standing to Pursue Their TCPA Claims

A plaintiff seeking federal jurisdiction bears the burden of showing that he has Article III standing. TransUnion LLC v. Ramirez, 141 S. Ct. 2190, 2203 (2021). See also Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992) (party invoking federal jurisdiction bears burden of proving standing). "If the plaintiff fails to meet its burden, this court lacks the power to create jurisdiction by embellishing a deficient allegation of injury." Id. To establish standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." Id. To be concrete, an injury must be "real, and not abstract." Id. (quoting Spokeo, Inc. v. Robins, 578 U.S. 330, 340 (2016). As the Supreme Court emphasized in Spokeo, "Article III standing requires a concrete injury even in the context of a statutory violation." Id., 578 U.S. at 341.

In the present matter, Plaintiffs are unable to establish Article III standing. Plaintiffs only allege two claims under the TCPA, one regarding calls made with the use of an ATDS and the other regarding prerecorded calls. As explained above, these allegations are not supported in any way by the evidence. Moreover, Plaintiffs have not sufficiently alleged, nor will they be able to show, that any injury was likely caused by Paul Moss. Accordingly, Plaintiffs are unable to articulate how they have been harmed or how such harm is the result of Paul Moss's actions.

Therefore, because Plaintiffs cannot carry their burden to establish that they have suffered a concrete injury in-fact or that such injury was likely caused by Paul Moss, they are not proper parties. Additionally, Plaintiff Jackson Pavelka only alleges that he is the subscriber of the telephone service used by his wife, Kaylee Pavelka, who received the calls. Mr. and Mrs. Pavelka are not each able to recover for the same alleged violations. The fact that they are both

Plaintiffs also raises questions concerning the class allegations in this matter, including whether the putative class includes subscribers or regular users of the phones at issue. Regardless, Plaintiffs cannot establish standing and therefore their claims should be dismissed.

**D.     Plaintiffs Do Not Sufficiently Plead, Nor Can They Establish, Vicarious Liability**

In their Complaint, Plaintiffs allege "to the extent any third party placed the telephone calls, the third party acted on behalf of Defendant, with Defendant's knowledge and approval, and under Defendant's direction and control. Further, Defendant knowingly received the benefit of the calls and has ratified the making of calls." (Complaint ¶ 16.) To establish vicarious liability, Plaintiffs would need to be able to establish one of three agency theories: actual authority, apparent authority, and ratification. "An essential element of agency is the principal's right to control the agent's actions." Restatement (Third) of Agency 1.01 cmt. F(1) (Am. L. Inst. 2006). To establish an agency relationship for TCPA purposes, "the plaintiff must show that the principal controlled the 'manner and means' of the allegedly violating phone call." Fabricant v. Elavon, Inc., No. C20-2960, 2020 WL 11884505, at (C.D. Cal. Aug. 25, 2020) *4 (citing Thomas v. Taco Bell Corp., 879 F. Supp. 2d 1079, 1084 (C.D. Cal. 2012)). Plaintiff's Complaint does not include sufficient allegations supporting the existence of an agency relationship.

As to actual authority, "The Restatement (Third) of Agency explains that '[a]n agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act.'" Keating v. Peterson's Nelnet, LLC, 615 F. App'x 365, 372 (6th Cir. 2015) (quoting Restatement (Third) of Agency § 2.01 (2006)). Here, Plaintiffs fail to plead that any party had Paul Moss's actual authority to make the calls at issue. Moreover, Plaintiffs fail to even identify a principal or an agency relationship.

"Apparent authority exists when (1) the principal manifests that another is the principal's agent, and (2) it is reasonable for a third person dealing with the agent to believe the agent is authorized to act for the principal." Cunningham v. Rapid Response Monitoring Servs., Inc., 251 F. Supp. 3d 1187, 1199 (M.D. Tenn. 2017). Plaintiffs fail to allege either of these elements for apparent authority and the facts set forth above demonstrate that they could not establish such a claim. For this reason, Plaintiffs are unable to plead or establish apparent authority.

Liability under the TCPA based on ratification exists when a seller "ratifies [the unlawful acts] by knowingly accepting their benefits"—for example, "through conduct justifiable only on the assumption that the person consents to be bound by the act's legal consequences." Cunningham, 251 F. Supp. 3d at 1198 (quoting In re Joint Petition Filed by Dish Network, LLC, et al., 28 F.C.C. Rcd. 6574 at ¶ 34 (2013)). Liability for the activities of a third-party robo-caller "must nevertheless be tied into some identifiable agency principle—there is no strict liability merely because the unlawful calls were made on behalf of the seller." Id. (citation and internal quotations omitted.) Here, Plaintiffs only offer threadbare recitals of the elements of a cause of action and conclusory statements. See, e.g., Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). They provide no factual predicate that gives rise to an inference of an agency relationship, nor can they.

Plaintiffs have not sufficiently plead vicarious liability, nor would they be successful in establishing it. Critically, they cannot demonstrate that Paul Moss controlled the "'manner and means' of the allegedly violating phone call." Fabricant, No. C20-2960, 2020 WL 11884505, at *4 (citations omitted). Significantly, the Agreement between Datalot and Paul Moss explicitly provides that Datalot is not an agent of Paul Moss. (Id. ¶ 12.) Moreover, Plaintiffs' allegations in the Complaint identify three separate conversations. (Complaint ¶ 20.) Paul Moss has set

forth the facts regarding the conversation with Datalot's representative and its own representative, but Plaintiffs have not plead sufficient facts regarding the initial call.

For these reasons, Plaintiffs have not pleaded facts to support a claim that Paul Moss is vicariously liable for Datalot's, or any other potential agent's, conduct. Without these supporting facts, Plaintiffs cannot establish a violation of the TCPA against Paul Moss based on a vicarious liability theory. Therefore, Plaintiffs are not the proper parties for their TCPA claims for this reason, either.

### IV. CONCLUSION

In light of the above facts and law, Paul Moss respectfully requests that this Court grant its Motion as to Whether Plaintiffs are Proper Parties and dismiss Plaintiffs' claims in their entirety.

*Dated, March 31, 2023*             Respectfully submitted,

                              */s/ Steven J. Forbes*
                              Steven J. Forbes (OH Bar No. 0042410)
                              **FREEMAN MATHIS & GARY, LLP**
                              Commerce Park IV
                              23240 Chagrin Blvd., Ste. 210
                              Telephone:   (216) 514-9500
                              Facsimile:   (888) 356-3596
                              E-mail:      steve.forbes@fmglaw.com
         -and-
                              */s/ Matthew N. Foree*
                              Matthew N. Foree, Esq. (GA Bar No. 268702)
                              **FREEMAN MATHIS & GARY, LLP**
                              1600 Galleria Parkway, Suite 1600
                              Atlanta, GA 30339
                              Telephone:   (770) 818-4245
                              Facsimile:   (770) 937-9960
                              E-mail:      mforee@fmglaw.com
                              Admitted *Pro Hac Vice*
                              Attorneys for Defendant
                              Paul Moss Insurance Agency, LLC
                              dba Epic Insurance Agency

**CERTIFICATE OF SERVICE**

      I hereby certify that on the 31st day of March, 2023, the foregoing Memorandum of Law in Support of Defendant's Motion for Determination that Plaintiffs are not Proper Parties and to Dismiss the Complaint was filed via the Court's electronic filing system (CM/ECF), which will send electronic notification of such filing to all parties represented by attorneys who are registered CM/ECF users. A courtesy copy has been provided to Plaintiffs' counsel of record via electronic mail.

Scott D. Simpkins  
Climaco, Wilcox, Peca & Garofoli Co., LPA  
55 Public Square, Suite 1950  
Cleveland, OH 44113  
SDSIMP@climacolaw.com

Taylor T. Smith  
Woodrow & Peluso, LLC  
3900 East Mexico Ave., Suite 300  
Denver, CO 80210  
tsmith@woodrowpeluso.com

                                            */s/ Steven J. Forbes*  
                                            Counsel for Defendant