IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JASON PAVELKA, et al., ) | CASE NO. 1:22-cv-2226 |
| ) | |
| Plaintiffs, ) | JUDGE DONALD C. NUGENT |
| ) | |
| vs. ) | |
| ) | |
| PAUL MOSS INSURANCE AGENCY, ) | |
| LLC, dba EPIQ INSURANCE AGENCY ) | |
| ) | |
| Defendant. ) | |

## DECLARATION OF STEPHEN WILT

Stephen Wilt, under 28 U.S.C. § 1746, declares as follows:

1. I currently work as a SVP, Client Services for Datalot, Inc.

2. In this role, I have personal knowledge of how Datalot maintains its records and am a custodian of Datalot's records.

3. The document attached as Exhibit A to this Declaration is a true and accurate copy of the October 21, 2013 Datalot Lead Sales Agreement with Moss Corporation and accompanying Insertion Orders.

4. Exhibit A was compiled and maintained by Datalot at the time the agreement was executed. It is maintained in the course of Datalot's regularly conducted business activity.

5. The separately filed recording marked as Exhibit B to this Declaration is a true and accurate copy of a recording of a September 29, 2022 telephone call maintained by Datalot.

**EXHIBIT 1**

CONFIDENTIAL

- 2 -

6.      Exhibit B was recorded by Datalot at the time the telephone call occurred and has been maintained in the course of Datalot's regularly conducted business activity.

7.      Making these records was a regular practice of that business activity.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

*[signature]*

Stephen Wilt

CONFIDENTIAL

## DATALOT LEAD SALES AGREEMENT

This Datalot Lead Sales Agreement ("Lead Sales Agreement"), entered into on this the _21_st day of _October__, 2013_ ("Effective Date"), by and between Datalot, Inc. a Delaware State corporation, with its principal place of business located at 228 Park Avenue South #21505, New York, NY 10003 ("Datalot"), and Moss Corporation, a _Nevada_ State corporation, with its principal place of business located at _3700 Park East Ste 300, Beachwood, OH 44122_ ("Purchaser"), sets forth the parties' respective rights and obligations concerning the sale of certain Leads (as that term in defined below) by Datalot to Purchaser. This Lead Sales Agreement shall incorporate the Datalot Insertion Order to which it is attached, and any subsequent and prior insertion orders entered into by the parties (collectively, the "IO" and together with this Lead Sales Agreement, the "Agreement"). Where there is a conflict between this Lead Sales Agreement and the IO, the IO shall govern in all respects.

**1. Lead Generation Services.** Datalot shall generate and collect self-reported data records (each individual data record a "Lead") as provided by prospective customers to Datalot and its third party marketing partners. Datalot shall transfer Leads that match Purchaser's criteria to Purchaser.

**2. Payment.** Purchaser will pay a Lead Fee as set forth in the IO of this Agreement (the "Payout") for each Valid Lead (hereinafter defined) transferred from Datalot. To be Valid, a Lead: (a) shall include all mandatory data fields to be completed by the individual, including, without limitation, the individual's actual first and last name, address, email, phone number and date of birth, (b) shall not be a Lead that contains the same name and the same address, phone number or e-mail address as a Lead that was delivered to Purchaser within the preceding thirty (30) days, and (c) shall not be a Lead generated by incentives, social media or co-registration methods. All tracking of Valid Leads and associated payments due therefor shall be determined by Datalot acting in good faith. However, the amount of Lead Fees payable to Datalot shall be reduced by the amount of any credits given for Leads determined not to be a Valid Lead and returned by the 15th day of the following month. Notwithstanding the foregoing, Purchaser may return no more than twenty-five percent (25%) of the Leads delivered to Purchaser in any given month regardless of cause. Where the parties cannot agree as to whether a Lead was a Valid Lead, Datalot's good faith determination shall control in all respects. Purchaser shall pay Seller on the 30th of the month or the next business day available in the event the 30th falls on a weekend or federally recognized holiday. Purchaser and Datalot agree to work mutually to identify an amicable solution in the event that Lead returns are identified as an issue of concern by either party. Any and all Leads that are not both accepted and paid for by Purchaser ("Unaccepted Leads") shall be deemed the Confidential Information (as defined below) of Datalot, subject to any and all restrictions set forth herein. Datalot may, at its sole discretion, terminate this Lead Sales Agreement, and any and all applicable IOs, for non-payment of amounts due.

**3. Ownership.** Unless otherwise designated in the IO, upon Purchaser's acceptance of a Lead (and payment to Datalot therefor in accordance with the payment terms set forth herein), Datalot shall grant to Purchaser joint ownership of the data associated with such Lead.

**4. Unaccepted Leads.** Where Purchaser does not accept Leads, where Purchaser fails to make payments for Leads in accordance with the payment terms herein and/or where such Leads are later determined not to be Valid Leads, Purchaser shall have no rights in and to such Leads, and the subject Leads shall revert to Unaccepted Leads. All rights not included in this license are expressly reserved by Datalot. Without limiting the generality of the confidentiality obligations set forth herein, Purchaser agrees that it: (a) will not transfer, export, display, forward or otherwise share information contained in the Unaccepted Leads to/with any third party; (b) will not use the information contained

in the Unaccepted Leads on its own behalf in any manner not expressly authorized by Datalot; (c) will not use the information contained in the Unaccepted Leads to create any interactive on-line, CD-ROM or other derivative product; (d) will not publicly display the information contained in the Unaccepted Leads on the Internet; and (e) will notify Datalot as soon as it learns of any actual or suspected unauthorized use of or access to the information contained in the Unaccepted Leads and provide reasonable assistance to Datalot in the investigation and prosecution of any such unauthorized use or disclosure.

**5. Confidential Information.** As used herein, "Confidential Information" shall mean: (a) either party's proprietary information; (b) information marked or designated by either party as confidential; (c) information otherwise disclosed by either party in a manner consistent with its confidential nature; (d) the terms and conditions of the Agreement, including pricing information; (e) as to Datalot, the Unaccepted Leads and any and all information contained in the Unaccepted Leads; and (f) both party's information that is conveyed to the other party, whether or not in written form and whether or not designated as confidential, that is known, or should reasonably be known, by the other party to be treated as confidential. The parties acknowledge that, as a result of the provision of services pursuant to the Agreement, one party may disclose Confidential Information ("Disclosing Party") to the other party ("Receiving Party"). Therefore, the Receiving Party agrees that it will make no disclosure of the Disclosing Party's Confidential Information without obtaining the Disclosing Party's prior written consent. Nothing contained in the Agreement shall be construed as granting or conferring rights by license or otherwise in any Confidential Information disclosed under the Agreement. Notwithstanding anything contained herein to the contrary, confidentiality provisions shall not apply where the Receiving Party can demonstrate with clear evidence that the information: (i) was previously known to the Receiving Party at the time of disclosure, free of any obligation to keep it confidential; (ii) became publicly known through no wrongful act of the Receiving Party; (iii) was rightfully and lawfully received by the Receiving Party from a third party who was not bound under any confidentiality provisions; or (iv) was disclosed pursuant to judicial order, requirement of a governmental agency or by operation of law, provided however that the Disclosing Party takes all reasonable and legal steps to minimize the scope and impact of such disclosures.

**6. Warranties.** Purchaser represents and warrants to Datalot that: (a) Purchaser has full power and authority to enter into the Agreement; (b) the use of data delivered by Datalot to Purchaser will not violate any law, statute or other governmental regulation; and (c) Purchaser's marketing attempts, as well as the products and/or services offered to the Leads ("Purchaser Products"), will at all times fully comply with all applicable laws, rules and/or regulations including, but not limited to, the Gramm-Leach Bliley Act, the Fair Credit Reporting Act, the Federal Trade Commission Act, the Telephone Consumer Protection Act, the Fair Debt Collection Practices Act, the Federal Communications Act, the Amended Telemarketing Sale Rule ("ATSR"), 16 CFR 310 et seq., and those governing the NDNCR, any and all state and federal laws regarding deceptive trade practices and all rules and regulations promulgated under any of the foregoing (collectively, "Laws"). Datalot represents and warrants to Purchaser that: (i) Datalot has full power and authority to enter into the Agreement; (ii) the execution, delivery and performance by Datalot of the Agreement will not violate any law, statute or other governmental regulation; and (iii) that Datalot's Lead generation activities will at all times fully comply with all applicable Laws.

**7. Audit.** Purchaser agrees that Datalot, or any designee of Datalot that is legally bound to obligations of confidentiality and non-disclosure, shall have the right during the term of this Lead Sales Agreement, and for three (3) months thereafter, to reasonably examine, inspect, audit and review Purchaser's books, records and any source documents used in the preparation thereof, as same relate to unauthorized use of the Unaccepted Leads generated hereunder. Such audit shall be conducted during normal business hours and upon written notice to Purchaser at least seven (7)

business days prior to its commencement. Such audit shall be at Datalot's sole cost and expense and shall be strictly limited to those books and records that specifically relate to unauthorized use of the Unaccepted Leads. Where Purchaser has used Unaccepted Leads, Purchaser shall immediately remit payment for such Unaccepted Leads.

**8. Indemnification.** Purchaser will indemnify and hold Datalot and its officers, directors, employees, successors and permitted assigns, harmless from and against any Losses (as defined below) arising out of, relating to or incurred as a result of (a) any failure by Purchaser to perform its obligations under this Agreement, (b) the breach or inaccuracy of a representation or warranty made by Purchaser under this Agreement, (c) any claim related to the Purchaser Products, (d) any claim related to Purchaser's use of the Leads, (e) any failure on its part to comply with applicable law, (f) the negligence or willful misconduct of Purchaser in the performance of its obligations under this Agreement, and (g) the infringement or misappropriation of any patent, copyright, trademark, trade secret, or other proprietary right of any third party in the performance of its obligations under this Agreement. For purposes of this Agreement, "Losses" means all out-of-pocket costs, fees, losses, damages, claims and expenses, including outside attorneys' fees, disbursements and court costs, incurred by a party.

Datalot will indemnify and hold Purchaser, and any of its subsidiaries, and their respective officers, directors, employees, successors and permitted assigns, harmless from and against any Losses arising out of, relating to or incurred as a result of (i) any failure by Datalot to perform its obligations under this Agreement; (ii) the breach or inaccuracy of a representation or warranty made by Seller under this Agreement; (iii) any failure by Seller to comply with applicable law; (iv) the negligence or willful misconduct of Seller in the performance of its obligations under this Agreement; and (v) the infringement or misappropriation of any patent, copyright, trademark, trade secret, or other proprietary right of any third party in the performance of its obligations under this Agreement.

**9. Term/Termination.** The initial term ("Initial Term") of this Lead Sales Agreement shall be one (1) year and shall commence on the date indicated above. Thereafter, this Lead Sales Agreement shall automatically renew on an annual basis for one (1) year terms unless otherwise terminated pursuant to the provisions set forth hereinbelow (the initial term and such subsequent renewals, collectively the "Term"). Unless otherwise set forth in the applicable IO, either party may terminate any IO upon seventy-two (72) hours' prior written notice to the other party. Where all IOs are cancelled, or concurrent with the cancellation of all IOs, either party may terminate this Lead Sales Agreement, with or without cause, on seventy-two (72) hours' prior written notice to the other party. Upon termination or expiration of this Lead Sales Agreement for any reason, Purchaser will pay Datalot all amounts then due and owing as of the termination date during the next billing cycle as set forth in Section 2 hereinabove.

**10. Warranty/Limitation of Liability.** THE SERVICES AND LEADS PROVIDED BY DATALOT UNDER THE AGREEMENT ARE SUPPLIED ON AN "AS IS" AND "AS AVAILABLE" BASIS. TO THE FULLEST EXTENT OF THE LAW, DATALOT MAKES NO WARRANTIES (INCLUDING IMPLIED WARRANTIES OF PURPOSE AND NON-INFRINGEMENT), GUARANTEES, REPRESENTATIONS, EXPRESS, IMPLIED, ORAL OR OTHERWISE, OTHER THAN THOSE EXPRESSLY SET FORTH HEREIN. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, DATALOT DOES NOT WARRANT OR GUARANTY LEADS AND/OR RESPONSE RATES. THE SERVICES AND/OR LEADS MAY CONTAIN BUGS, ERRORS, PROBLEMS OR OTHER LIMITATIONS. DATALOT HAS NO

CONFIDENTIAL

LIABILITY, WHATSOEVER, TO PURCHASER OR ANY THIRD-PARTY, FOR ANY OTHER PARTY'S SECURITY METHODS OR PRIVACY PROTECTION PROCEDURES AND DATALOT DISCLAIMS ANY AND ALL WARRANTIES, EXPRESS AND IMPLIED, ASSOCIATED WITH SAME. DATALOT HAS NO LIABILITY FOR PURCHASER'S USE OF, OR INABILITY TO USE, THE LEADS AND DATALOT DISCLAIMS ANY AND ALL WARRANTIES, EXPRESS AND/OR IMPLIED, THAT PURCHASER'S USE OF THE LEADS WILL BE UNINTERRUPTED OR ERROR-FREE. IN NO EVENT SHALL DATALOT BE RESPONSIBLE FOR ANY CONSEQUENTIAL, SPECIAL, PUNITIVE OR OTHER INDIRECT DAMAGES INCLUDING, WITHOUT LIMITATION, LOST REVENUE OR PROFITS, EVEN IF DATALOT HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. NOTWITHSTANDING ANYTHING CONTAINED HEREIN TO THE CONTRARY, DATALOT'S LIABILITY UNDER ANY CAUSE OF ACTION SHALL BE LIMITED TO THE AMOUNTS PAID TO DATALOT BY PURCHASER PURSUANT TO THE AGREEMENT. DATALOT SHALL NOT BE HELD LIABLE OR RESPONSIBLE FOR ANY ACTIONS OR INACTIONS OF ITS SUB-LICENSEES.

**11. Force Majeure.** Other than for payment obligations, neither party will be liable, or be considered to be in breach of the Agreement, on account of such party's delay or failure to perform as required under the terms of the Agreement as a result of any causes or conditions that are beyond such party's reasonable control and that such party is unable to overcome through the exercise of commercially reasonable diligence (a "Force Majeure Event"). If any such Force Majeure Event occurs including, without limitation, acts of God, fires, explosions, telecommunications, Internet or network failure, results of vandalism or computer hacking, storm or other natural occurrences, national emergencies, acts of terrorism, insurrections, riots, wars, strikes or other labor difficulties, or any act or omission of any other person or entity, the affected party will give the other party notice and will use commercially reasonable efforts to minimize the impact of any such event.

**12. Relationship of the Parties.** The relationship of Datalot and Purchaser established by the Agreement is solely that of independent contractors, and neither party is an employee, agent, partner or joint venturer of the other. Neither party shall make any representations, warranties or covenants, or assume or create any obligations, on the other party's behalf. Each party shall be solely responsible for the actions of its respective employees, agents, affiliates and representatives.

**13. Jurisdiction/Venue.** The Agreement will be interpreted, construed and enforced in all respects in accordance with the laws of the state of the plaintiff, without giving effect to its conflicts of law principles. Each party irrevocably consents to the exclusive jurisdiction of the state and federal courts located in the state and county of the plaintiff, in connection with any action arising under the Agreement. The parties agree that service by a major overnight courier (such as FedEx or UPS) shall constitute valid and effective service of process in any action arising under the Agreement.

**14. Waiver.** No delay or failure by Datalot or Purchaser to exercise any right under the Agreement, and no partial or single exercise of that right, shall constitute a waiver of that or any other right, unless otherwise expressly provided herein. A waiver of default shall not be a waiver of any other or subsequent default.

**15. Entire Agreement.** This Lead Sales Agreement, together with any applicable IOs, contains the entire agreement between the parties. No modification of this Lead Sales Agreement or any IO shall be effective unless in writing and executed by an executive officer of both parties.

**16. Severability.** If any provision contained in the Agreement is determined to be invalid, illegal or unenforceable in any respect under any applicable law, then such provision will be severed and replaced with a new provision that most closely reflects the real intention of the parties, and the remaining provisions of the Agreement will remain in full force and effect.

**17. Assignment.** Neither party shall, without the prior written consent of the other party, assign its rights or delegate its duties under the Agreement, which consent shall not be unreasonably withheld, delayed or conditioned; provided, however, that either party may, in the event of a merger, acquisition, joint venture or sale of substantially all of such party's assets or business (or any substantially similar transaction), assign the Agreement without the consent of the other party. The provisions of the Agreement shall be binding upon and inure to the benefit of the parties and their permitted successors and assigns.

    **IN WITNESS WHEREOF,** Datalot and Purchaser have each caused this Lead Sales Agreement to be executed by their duly authorized representatives.

| DATALOT, INC. | PURCHASER |
|---|---|
| Signature: *Stv Wilt* | Signature: *Kate Budd* |
| Print Name: STEVE WILT | Print Name: Kate Budd |
| Title: SVP | Title: SVP Operations & Marketing |
| Date: 10/24/13 | Date: 10-24-13 |

CONFIDENTIAL

## DATALOT INSERTION ORDER

| Order Date | 10/21/2013 |
|---|---|
| Purchaser Name | Moss Corporation |

| I/O Number | MAM- 006 |
|---|---|
| Offer Name | Auto Exclusives |

### PURCHASER PRIMARY CONTACT

| Contact Name | Brock Thompson |
|---|---|
| Phone | 330.206.8810 |
| Fax | |
| E-mail | bthompson@mosscorps.com |

### DATALOT REPRESENTATIVE

| Name | Steve Wilt |
|---|---|
| Phone | 910-599-7627 |
| Fax | |
| E-mail | swilt@datalot.com |

**Special Instructions:** Standard Ping Post

### PURCHASER BILLING CONTACT

| Contact Name | Mary Anne Lampertt |
|---|---|
| Agency | Moss |
| Address 1 | 3700 Park East Dr, Ste 350, |
| Address 2 | |
| City, State, Zip | Beachwood, OH 44122 |
| Country | |
| Phone | 440-635-6115 |
| Fax | |
| E-mail | mlampertt@mosscorps.com |

### DEAL SPECIFICATIONS

| Payment Terms | Net 30 |
|---|---|
| Reporting | Datalot |
| Exclusive Leads | Exclusive |

| Lead Cap / Period | |
|---|---|
| Cost Per Lead | Dynamic |
| Maximum Scrub Rate | |

**Additional Comments:**

The parties agree and acknowledge that this Datalot Insertion Order ("IO") shall be incorporated into, and govern, the Datalot Lead Sales Agreement entered into by and between the parties on or about October 24, 2013 (the "Lead Sales Agreement"). To the extent that anything in or associated with this IO is in conflict or inconsistent with the Lead Sales Agreement, this IO shall take precedence.

| PURCHASER: PMLLC<br>Kate Budd | AUTHORIZED SIGNATURE:<br>*Kate Budd* |
|---|---|
| TITLE: SVP Operations & Marketing | DATE: 10-28-13 |
| DATALOT, INC.:<br>Steve Wilt | AUTHORIZED SIGNATURE:<br>*Steve Wilt* |
| TITLE: Senior Vice President | DATE: 10-28-13 |

CONFIDENTIAL

## DATALOT INSERTION ORDER

| Order Date | 10/21/2013 |
|---|---|
| Purchaser Name | Moss Corporation |

| I/O Number | MAM- 004 |
|---|---|
| Offer Name | Auto Leg CD13116 |

### PURCHASER PRIMARY CONTACT

| Contact Name | Brock Thompson |
|---|---|
| Phone | 330.206.8810 |
| Fax | |
| E-mail | bthompson@mosscorps.com |

### DATALOT REPRESENTATIVE

| Name | Steve Wilt |
|---|---|
| Phone | 910-599-7627 |
| Fax | |
| E-mail | swilt@datalot.com |

**Special Instructions:**
Billable event of $1.70 per direct post upon receipt of Accept from Moss system.

### PURCHASER BILLING CONTACT

| Contact Name | Mary Anne Lampertt |
|---|---|
| Agency | Moss |
| Address 1 | 3700 Park East Dr, Ste 350, |
| Address 2 | |
| City, State, Zip | Beachwood, OH 44122 |
| Country | |
| Phone | 440-635-6115 |
| Fax | |
| E-mail | mlampertt@mosscorps.com |

### DEAL SPECIFICATIONS

| Payment Terms | Net 30 |
|---|---|
| Reporting | Datalot |
| Exclusive Leads | No |

| Lead Cap / Period | |
|---|---|
| Cost Per Lead | $1.70 |
| Maximum Scrub Rate | |

**Additional Comments:**

The parties agree and acknowledge that this Datalot Insertion Order ("IO") shall be incorporated into, and govern, the Datalot Lead Sales Agreement entered into by and between the parties on or about October 24 2012 (the "Lead Sales Agreement"). To the extent that anything in or associated with this IO is in conflict or inconsistent with the Lead Sales Agreement, this IO shall take precedence.

| PURCHASER: PMLLC<br>Kate Budd | AUTHORIZED SIGNATURE:<br>*Kate Budd* |
|---|---|
| TITLE: SVP Operations & Marketing | DATE: 10-28-13 |
| DATALOT, INC.:<br>Steve Wilt | AUTHORIZED SIGNATURE:<br>*St Wilt* |
| TITLE: Senior Vice President | DATE: 10-28-13 |

CONFIDENTIAL

## DATALOT INSERTION ORDER

| Order Date | 10/21/2013 |
|---|---|
| Purchaser Name | Moss Corporation |

| I/O Number | MAM- 003 |
|---|---|
| Offer Name | Auto Leg CD13117 |

### PURCHASER PRIMARY CONTACT

| Contact Name | Brock Thompson |
|---|---|
| Phone | 330.206.8810 |
| Fax | |
| E-mail | bthompson@mosscorps.com |

### DATALOT REPRESENTATIVE

| Name | Steve Wilt |
|---|---|
| Phone | 910-599-7627 |
| Fax | |
| E-mail | swilt@datalot.com |

**Special Instructions:**
Billable event of $1.70 per direct post upon receipt of Accept from Moss system.

### PURCHASER BILLING CONTACT

| Contact Name | Mary Anne Lampertt |
|---|---|
| Agency | Moss |
| Address 1 | 3700 Park East Dr, Ste 350, |
| Address 2 | |
| City, State, Zip | Beachwood, OH 44122 |
| Country | |
| Phone | 440-635-6115 |
| Fax | |
| E-mail | mlampertt@mosscorps.com |

### DEAL SPECIFICATIONS

| Payment Terms | Net 30 |
|---|---|
| Reporting | Datalot |
| Exclusive Leads | No |

| Lead Cap / Period | |
|---|---|
| Cost Per Lead | $1.70 |
| Maximum Scrub Rate | |

**Additional Comments:**

The parties agree and acknowledge that this Datalot Insertion Order ("IO") shall be incorporated into, and govern, the Datalot Lead Sales Agreement entered into by and between the parties on or about October, 24 2012 (the "Lead Sales Agreement"). To the extent that anything in or associated with this IO is in conflict or inconsistent with the Lead Sales Agreement, this IO shall take precedence.

| PURCHASER: PMLLC<br>Kate Budd | AUTHORIZED SIGNATURE:<br>Kate Budd |
|---|---|
| TITLE: SVP Operations & Marketing | DATE: 10-28-13 |
| DATALOT, INC.:<br>Steve Wilt | AUTHORIZED SIGNATURE:<br>Steve Wilt |
| TITLE: Senior Vice President | DATE: 10-28-13 |

## DATALOT INSERTION ORDER

| Order Date | 10/21/2013 |
|---|---|
| Purchaser Name | Moss Corporation |

| I/O Number | MAM- 005 |
|---|---|
| Offer Name | Auto Leg CD13118 |

### PURCHASER PRIMARY CONTACT

| Contact Name | Brock Thompson |
|---|---|
| Phone | 330.206.8810 |
| Fax | |
| E-mail | bthompson@mosscorps.com |

### DATALOT REPRESENTATIVE

| Name | Steve Wilt |
|---|---|
| Phone | 910-599-7627 |
| Fax | |
| E-mail | swilt@datalot.com |

**Special Instructions:**
Billable event of $1.70 per direct post upon receipt of Accept from Moss system.

### PURCHASER BILLING CONTACT

| Contact Name | Mary Anne Lampertt |
|---|---|
| Agency | Moss |
| Address 1 | 3700 Park East Dr, Ste 350, |
| Address 2 | |
| City, State, Zip | Beachwood, OH 44122 |
| Country | |
| Phone | 440-635-6115 |
| Fax | |
| E-mail | mlampertt@mosscorps.com |

### DEAL SPECIFICATIONS

| Payment Terms | Net 30 |
|---|---|
| Reporting | Datalot |
| Exclusive Leads | No |

| Lead Cap / Period | |
|---|---|
| Cost Per Lead | $1.70 |
| Maximum Scrub Rate | |

**Additional Comments:** Only include AZ,CA,CO,IL,KY,MD,MN,MO,NJ,OH,PA,SC,TN,TX,VA,WA

The parties agree and acknowledge that this Datalot Insertion Order ("IO") shall be incorporated into, and govern, the Datalot Lead Sales Agreement entered into by and between the parties on or about October 24, 2013 (the "Lead Sales Agreement"). To the extent that anything in or associated with this IO is in conflict or inconsistent with the Lead Sales Agreement, this IO shall take precedence.

| PURCHASER: PMLLC<br>Kate Budd | AUTHORIZED SIGNATURE:<br>Kate Budd |
|---|---|
| TITLE: SVP Operations & Marketing | DATE: 10-28-13 |
| DATALOT, INC.:<br>Steve Wilt | AUTHORIZED SIGNATURE:<br>Steve Wilt |
| TITLE: Senior Vice President | DATE: 10-28-13 |

CONFIDENTIAL

## DATALOT INSERTION ORDER

| Order Date | 10/21/2013 |
|---|---|
| Purchaser Name | Moss Corporation |

| I/O Number | MAM- 007 |
|---|---|
| Offer Name | Auto Undersold |

### PURCHASER PRIMARY CONTACT

| Contact Name | Brock Thompson |
|---|---|
| Phone | 330.206.8810 |
| Fax | |
| E-mail | bthompson@mosscorps.com |

### DATALOT REPRESENTATIVE

| Name | Steve Wilt |
|---|---|
| Phone | 910-599-7627 |
| Fax | |
| E-mail | swilt@datalot.com |

**Special Instructions:** Standard Ping Post containing exclusion directives

### PURCHASER BILLING CONTACT

| Contact Name | Mary Anne Lampertt |
|---|---|
| Agency | Moss |
| Address 1 | 3700 Park East Dr, Ste 350, |
| Address 2 | |
| City, State, Zip | Beachwood, OH 44122 |
| Country | |
| Phone | 440-635-6115 |
| Fax | |
| E-mail | mlampertt@mosscorps.com |

### DEAL SPECIFICATIONS

| Payment Terms | Net 30 |
|---|---|
| Reporting | Datalot |
| Exclusive Leads | No |

| Lead Cap / Period | |
|---|---|
| Cost Per Lead | Dynamic |
| Maximum Scrub Rate | |

**Additional Comments:**

The parties agree and acknowledge that this Datalot Insertion Order ("IO") shall be incorporated into, and govern, the Datalot Lead Sales Agreement entered into by and between the parties on or about October 24, 2013 (the "Lead Sales Agreement"). To the extent that anything in or associated with this IO is in conflict or inconsistent with the Lead Sales Agreement, this IO shall take precedence.

| PURCHASER: PMLLC<br>Kate Budd | AUTHORIZED SIGNATURE:<br>*Kate Budd* |
|---|---|
| TITLE: SVP Operations & Marketing | DATE: 10-28-13 |
| DATALOT, INC.:<br>Steve Wilt | AUTHORIZED SIGNATURE:<br>*Steve Wilt* |
| TITLE: Senior Vice President | DATE: 10-28-13 |

CONFIDENTIAL

## DATALOT INSERTION ORDER

| Order Date | 10/21/2013 |
|---|---|
| Purchaser Name | Moss Corporation |

| I/O Number | MAM- 001 |
|---|---|
| Offer Name | Health Insurance Over 65 |

### PURCHASER PRIMARY CONTACT

| Contact Name | Brock Thompson |
|---|---|
| Phone | 330.206.8810 |
| Fax | |
| E-mail | bthompson@mosscorps.com |

### DATALOT REPRESENTATIVE

| Name | Steve Wilt |
|---|---|
| Phone | 910-599-7627 |
| Fax | |
| E-mail | swilt@datalot.com |

**Special Instructions:**

Must be above 65

### PURCHASER BILLING CONTACT

| Contact Name | Mary Anne Lampertt |
|---|---|
| Agency | Moss |
| Address 1 | 3700 Park East Dr, Ste 350, |
| Address 2 | |
| City, State, Zip | Beachwood, OH 44122 |
| Country | |
| Phone | 440-635-6115 |
| Fax | |
| E-mail | mlampertt@mosscorps.com |

### DEAL SPECIFICATIONS

| Payment Terms | Net 30 |
|---|---|
| Reporting | Datalot |
| Exclusive Leads | Exclusive |

| Lead Cap / Period | |
|---|---|
| Cost Per Lead | Dynamic |
| Maximum Scrub Rate | |

**Additional Comments:** Exclusive Leads

The parties agree and acknowledge that this Datalot Insertion Order ("IO") shall be incorporated into, and govern, the Datalot Lead Sales Agreement entered into by and between the parties on or about October, 24 2012 (the "Lead Sales Agreement"). To the extent that anything in or associated with this IO is in conflict or inconsistent with the Lead Sales Agreement, this IO shall take precedence.

| PURCHASER: PMLLC<br>Kate Budd | AUTHORIZED SIGNATURE:<br>Kate Budd |
|---|---|
| TITLE: SVP Operations & Marketing | DATE: 10-28-13 |
| DATALOT, INC.:<br>Steve Wilt | AUTHORIZED SIGNATURE:<br>St Wilt |
| TITLE: Senior Vice President | DATE: 10-28-13 |

CONFIDENTIAL

## DATALOT INSERTION ORDER

| Order Date | 10/21/2013 |
|---|---|
| Purchaser Name | Moss Corporation |

| I/O Number | MAM- 002 |
|---|---|
| Offer Name | Health Insurance Under 65 |

### PURCHASER PRIMARY CONTACT

| Contact Name | Brock Thompson |
|---|---|
| Phone | 330.206.8810 |
| Fax | |
| E-mail | bthompson@mosscorps.com |

### DATALOT REPRESENTATIVE

| Name | Steve Wilt |
|---|---|
| Phone | 910-599-7627 |
| Fax | |
| E-mail | swilt@datalot.com |

**Special Instructions:**

Must be under 65

### PURCHASER BILLING CONTACT

| Contact Name | Mary Anne Lampertt |
|---|---|
| Agency | Moss |
| Address 1 | 3700 Park East Dr, Ste 350, |
| Address 2 | |
| City, State, Zip | Beachwood, OH 44122 |
| Country | |
| Phone | 440-635-6115 |
| Fax | |
| E-mail | mlampertt@mosscorps.com |

### DEAL SPECIFICATIONS

| Payment Terms | Net 30 |
|---|---|
| Reporting | Datalot |
| Exclusive Leads | Exclusive |

| Lead Cap / Period | |
|---|---|
| Cost Per Lead | Dynamic |
| Maximum Scrub Rate | |

**Additional Comments**: Exclusive leads

The parties agree and acknowledge that this Datalot Insertion Order ("IO") shall be incorporated into, and govern, the Datalot Lead Sales Agreement entered into by and between the parties on or about October, 24 2012 (the "Lead Sales Agreement"). To the extent that anything in or associated with this IO is in conflict or inconsistent with the Lead Sales Agreement, this IO shall take precedence.

| PURCHASER: PMLLC<br>Kate Budd<br><br>TITLE: SVP Operations & Marketing | AUTHORIZED SIGNATURE:<br>*Kate Budd*<br>DATE: 10-28-13 |
|---|---|
| DATALOT, INC.:<br>Steve Wilt<br><br>TITLE: Senior Vice President | AUTHORIZED SIGNATURE:<br>*Steve Wilt*<br>DATE: 10-28-13 |

CONFIDENTIAL

# EXHIBIT B

EXHIBIT B HAS BEEN

FILED MANUALLY UNDER SEAL

(AUDIO FILE ON FLASH DRIVE)